IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 104,533

STATE OF KANSAS,
*Appellee*,

v.

JIMMY MURDOCK,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 21-4711(e) governs the classification of out-of-state crimes/convictions as person or nonperson offenses. It provides in part that if the state of Kansas does not have a comparable offense, the out-of-state conviction must be classified as a nonperson offense.

2.

A fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.

3.

The appellate rule that the penalty parameters for an offense are fixed as of the date of the commission of the offense is fair, logical, and easy to apply.

4.

Kansas did not begin classifying crimes as person or nonperson offenses until 1993 when the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq*., was enacted.

1

5.

When calculating a defendant's criminal history that includes out-of-state convictions committed prior to enactment of the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, the out-of-state convictions must be classified as nonperson offenses. Prior caselaw contrary to this holding is overruled.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 9, 2011. Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed May 2, 2014. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded with directions.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause, and *Ryan Eddinger*, of the same office, was on the brief for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Natalie Chalmers*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  Jimmy Murdock argues the district court erroneously calculated his criminal history score during a sentencing proceeding by treating two prior out-of-state convictions from 1984 and 1990 as person crimes instead of nonperson crimes. The issue is rare because these prior out-of-state offenses were committed before enactment of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, and the KSGA does not expressly provide how such offenses should be classified. We conclude these convictions should be treated as nonperson offenses. Accordingly, we reverse the Court of Appeals and the district court and remand for resentencing with directions to classify the two prior out-of-state convictions as nonperson offenses.

FACTUAL AND PROCEDURAL BACKGROUND

Murdock pleaded guilty to two counts of aggravated robbery and one count of robbery for crimes occurring in December 2008. To calculate his sentence, the district court found Murdock had two Illinois robbery convictions from 1984 and 1990 and a 1996 Kansas robbery conviction. It classified all three prior convictions as person offenses, which gave Murdock three or more adult convictions for person felonies. This treatment placed him in criminal history category A under K.S.A. 21-4709. Murdock was sentenced to 233 months' imprisonment for the first aggravated robbery conviction and concurrent 36-month sentences for the remaining two convictions. He would have fallen within criminal history category C if the two out-of-state convictions had been designated as nonperson offenses, resulting in a lesser sentence. See K.S.A. 21-4709; K.S.A. 21-4704.

Murdock timely appealed his sentences to the Court of Appeals, arguing the two out-of-state convictions were wrongly classified as person offenses. The Court of Appeals affirmed the district court in *State v. Murdock*, No. 104,533, 2011 WL 4031550, at *3 (Kan. App. 2011) (unpublished opinion). Murdock petitioned for this court's review, which was granted under K.S.A. 20-3018(b), with this court obtaining jurisdiction under K.S.A. 60-2101(b).

ANALYSIS

The issue is whether the district court improperly scored Murdock's criminal history because it classified his two Illinois robbery convictions as person offenses. Murdock argues both crimes should have been scored as nonperson offenses under

3

K.S.A. 21-4710(d)(8). In the alternative, he contends this court should determine the legislature intended to designate pre-1993 convictions as nonperson offenses.

*Standard of Review*

This case turns on the interpretation of several sentencing statutes. Statutory interpretation is a question of law subject to unlimited appellate review. *State v. Guder*, 293 Kan. 763, 765, 267 P.3d 763 (2012). If a statute is plain and unambiguous, appellate courts do not speculate about legislative intent or resort to canons of construction or legislative history. *State v. Coman*, 294 Kan. 84, 92, 273 P.3d 701 (2012).

*Classifying pre-KSGA convictions*

In scoring criminal history under the KSGA, distinctions are made between person and nonperson crimes. Compare K.S.A. 21-3427 (aggravated robbery is a person offense) with K.S.A. 21-3701 (theft is a nonperson offense). Generally speaking, person crimes are weighted more heavily than nonperson crimes. See K.S.A. 21-4709.

K.S.A. 21-4711(e) governs the classification of out-of-state crimes/convictions. It states in pertinent part:

> "The state of Kansas shall classify the [prior out-of-state] crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime." K.S.A. 21-4711(e).

The KSGA does not define comparable offense, but this court has previously held a comparable offense is determined by comparing the elements of the crimes, stating that

4

"the offenses need only be comparable, not identical." *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003).

Murdock does not dispute that his out-of-state robbery convictions are comparable to the Kansas crime of robbery, and a review of the elements of those crimes supports this admission. Compare Ill. Com. Stat. ch. 270 5/18-1(a) (2003) with K.S.A. 21-3426. But one must also identify the correct version of our Kansas statute to make this comparison, which is where Murdock's dispute draws its focus.

Kansas did not begin categorizing crimes as person or nonperson offenses until 1993 when the KSGA was adopted. See L. 1992, ch. 239, sec. 1 (KSGA effective July 1, 1993). When Murdock was convicted of the Illinois robberies (which were felony offenses) in 1984 and 1990, Kansas simply defined robbery as a "class C felony." K.S.A. 21-3426 (Ensley 1981). The record does not disclose the dates when the out-of-state offenses were committed, but K.S.A. 21-3426 (Ensley 1981) was not amended from the prior enactment in 1969 until 1992. See K.S.A. 21-3426 (historical notes). Therefore, it is obvious the same penalty provision was in effect at the time Murdock committed his out-of-state offenses. In December 2008, when Murdock committed the current crimes of conviction, Kansas defined robbery as a "severity level 5, person felony." K.S.A. 21-3426.

Murdock argues the comparable offense to his Illinois robbery convictions is K.S.A. 21-3426 (Ensley 1981)—the statute in effect when the Illinois crimes were committed. He notes K.S.A. 21-4710(d)(8), which pertains to scoring unclassified crimes, states: "Unless otherwise provided by law, unclassified felonies and misdemeanors, shall be considered and scored as nonperson crimes for the purpose of determining criminal history." This statute, he reasons, requires his Illinois convictions to be treated as nonperson offenses based on this court's holding in *State v. Williams*, 291 Kan. 554, Syl.

5

¶ 4, 244 P.3d 667 (2010), that the comparable Kansas offenses must be determined as of the date the defendant committed the out-of-state crimes.

In the *Williams* case, Williams had pleaded guilty to two counts of identity theft for crimes occurring in 2005 and 2006. Her criminal history was scored based on five State of Washington convictions for identity theft that she had committed between December 2001 and September 2002. At the time Williams committed those out-of-state crimes, Kansas classified identity theft—the comparable offense—as a person offense, but it had reclassified that crime as a nonperson offense by the time Williams committed and was sentenced for her Kansas crimes. The parties disputed whether the comparable offense should be determined as of the date of her Kansas sentencing, when she committed the Kansas offenses, or when Williams committed the prior Washington offenses.

The *Williams* court held that in the absence of a statutory directive a comparable offense should be determined as of the date the prior crime was committed. This outcome, the court reasoned, was "consistent with our fundamental rule of sentencing for a current in-state crime:  sentencing in accordance with the penalty provisions in effect at the time the crime was committed." 291 Kan. at 560. The court further held that fixing the penalty parameters for an offense "'as of the date of the commission of the offense is fair, logical and easy to apply.'" 291 Kan. at 560 (quoting *Vanderwort*, 276 Kan. at 180).

Since then, the Court of Appeals has followed *Williams* when the prior out-of-state offense was committed after the sentencing guidelines were adopted in 1993. See, *e.g.*, *State v. McKinney*, No. 102,906, 2010 WL 5185779, at *1 (Kan. App. 2010) (unpublished opinion) (scoring a 2002 Oklahoma conviction based on the designation for the comparable Kansas offense at the time the Oklahoma offense was committed). But the Court of Appeals, including the *Murdock* panel, has adopted a different rule when the

6

prior out-of-state crimes were committed before Kansas adopted the person/nonperson offense designation in 1993.

The *Murdock* panel held that pre-1993 offenses should be designated based on the current guidelines offenses, reasoning: "Kansas courts have routinely classified pre-1993 offenses as either person or nonperson for criminal history purposes *by comparing the offenses to current guidelines offenses.*" (Emphasis added.) *Murdock*, 2011 WL 4031550, at *2; see *State v. Mitchell*, No. 104,833, 2012 WL 1649831, at *7 (Kan. App. 2012) (unpublished opinion), *petition for rev.* filed June 4, 2012; *State v. Mims*, No. 103,044, 2011 WL 4563068, at *5 (Kan. App. 2011) (unpublished opinion).

Notably, this reference to "current guidelines offenses" is ambiguous. For example, how is the panel's rule applied in cases like *Williams* when the legislature modified the classification after the KSGA was adopted? Seemingly, the rule would conflict with this court's controlling law as stated in *Williams*. In addition, the view followed by the Court of Appeals in these cases is troubling because it originated in a series of Court of Appeals cases that predate this court's *Williams* decision. See, *e.g.*, *State v. Henderson*, No. 100,371, 2009 WL 2948657, at *3 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1099 (2010); *State v. Boster*, No. 101,009, 2009 WL 3738490, at *4 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1096 (2010). The *Murdock* panel did not address *Williams* in its analysis despite citing it as holding "comparable Kansas offenses are determined by the date the defendant committed the prior out-of-state offenses" while summarizing Murdock's claims. *Murdock*, 2011 WL 4031550, at *1 (citing *Williams*, 291 Kan. at 560-62).

The panel did cite *Farris v. McKune*, 259 Kan. 181, 185-86, 911 P.2d 177 (1996), as sufficiently analogous to support its holding. *Murdock*, 2011 WL 4031550, at *2. But *Farris* is not applicable because it addresses the Department of Corrections' conversion

of three offenders' preguidelines sentences to the sentencing guidelines, which was controlled by K.S.A. 21-4724(c)(1). The *Farris* court held that "'[i]n converting a sentence, the legislature intended that the Department of Corrections use records available to it to determine what the defendant did when the crime was committed and convert that crime to an analogous crime existing after July 1, 1993.'" 259 Kan. at 195 (quoting *State v. Fierro*, 257 Kan. 639, 650, 895 P.2d 186 [1995]). The KSGA lacks a similar provision for persons who were not imprisoned at the time the KSGA was enacted.

In the absence of a statutory directive, we are left with our decision in *Williams* that the comparable Kansas offense should be determined as of the date the out-of-state offenses were committed. Even though the State seeks a different rule in this appeal, we must emphasize we adopted the current rule at the State's urging in *Williams*. See 291 Kan. at 559 (State argued this court should score the Washington offenses according to their Kansas equivalents when the Washington offenses were committed).

Our analysis in *Williams* is indistinguishable from the analysis applicable to the circumstances presented here, and the same policy considerations continue to apply. Using the date the prior out-of-state crime was committed to calculate a defendant's criminal history score is "consistent with our fundamental rule of sentencing for a current in-state crime:  sentencing in accordance with the penalty provisions in effect at the time the crime was committed." 291 Kan. at 560. Moreover, fixing the penalty parameters as of the date the crime was committed is fair, logical, and easy to apply. 291 Kan. at 560. Applying that rule, robbery as defined in K.S.A. 21-3426 (Ensley 1981) is the comparable Kansas offense. The penalty provision of that pre-1993 statute classifies robbery as a class C felony, and it does not designate the offense as person or nonperson.

8

Finally, since the statute does not specify whether it is a person or nonperson offense, Murdock argues it must be scored as a nonperson offense under K.S.A. 21-4710(d)(8), which provides that "unclassified felonies and misdemeanors, shall be considered and are scored as nonperson offenses for the purposes of determining criminal history." The plain language of the statute seems to apply in this circumstance, although the legislature refers to person or nonperson offenses as "designations," not "classifications," in K.S.A. 21-4711(e), (g). Notably, neither of these terms is defined in K.S.A. 21-4703.

Murdock's view is misplaced. And although there may be other twists placed on the statute, it is likely K.S.A. 21-4710(d)(8) was adopted to address the scoring of a very limited number of current criminal statutes that do not categorize the crimes as person or nonperson offenses. See, *e.g.*, K.S.A. 21-4213 (unlawful failure to report a wound is a "class C misdemeanor"); K.S.A. 21-4218 (unauthorized possession of a firearm on the grounds of or within certain state buildings is a "class A misdemeanor"); K.S.A. 21-4312 (unlawful disposition of animals is a "class C misdemeanor"); K.S.A. 21-4409 (knowingly employing an alien is a "class C misdemeanor"). And we believe it unlikely the legislature intended that K.S.A. 21-4710(d)(8) govern all pre-1993 convictions.

But there is no statutory mechanism either through K.S.A. 21-4710(d)(8) or another KSGA provision allowing us to draw a distinction between the current guidelines sentencing statutes and the pre-1993 criminal statutes. We hold that Murdock's two prior out-of-state convictions must be scored as nonperson offenses under K.S.A. 21-4710(d)(8) following our controlling *Williams* precedent. We recognize this rule results in the classification of all pre-1993 crimes as nonperson felonies—an outcome the State characterizes as unreasonable. But the solution to the State's complaint sits with the legislature.

9

As noted above, the legislature enacted K.S.A. 21-4724(c)(1), instructing the Department of Corrections to recalculate certain inmates' criminal history classifications "as if the [prior] crime were committed on or after July 1, 1993." The legislature can amend the KSGA to address this issue as well if it deems an amendment appropriate.

We overrule all Court of Appeals decisions applying the rule recited by the Court of Appeals panel in this case. We reverse the Court of Appeals and the district court and remand for resentencing with directions to classify the prior out-of-state convictions as nonperson offenses.

* * *

ROSEN, J., dissenting:  I respectfully dissent from the majority's opinion finding that all out-of-state crimes/convictions committed prior to 1993 must be classified as nonperson offenses. Further, as a result of this decision, all in-state convictions prior to 1993, regardless of how violent or heinous, appear to be subject to the same outcome. I would adopt the reasoning of the Court of Appeals that such a conclusion leads to an unreasonable result and ignores the purpose and design of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq*.

In 1989, the Kansas Legislature established the Kansas Sentencing Commission and directed the Commission to develop a sentencing guidelines model or grid, based on fairness and equity, that provides a mechanism for linking justice and correction policies. The purpose of the sentencing guidelines model was to establish rational and consistent sentencing standards which reduce sentence disparity, including, but not limited to, racial and regional biases that existed under then current sentencing practices. As a result, the Commission identified and prioritized a set of goals to be attained in developing a uniform sentencing guidelines system, the first three of which are germane to this appeal:

10

1. To develop a set of guidelines that promotes public safety by incarcerating violent offenders;

2. To reduce sentence disparity to ensure the elimination of any racial, geographical or other bias that may exist;

3. To establish sentences that are proportional to the seriousness of the offense and the degree of injury to the victim.

K.S.A. 2013 Supp. 74-9101(b).

Ultimately, the Commission recommended a presumptive sentencing system, represented by sentencing grids for both nondrug and drug offenses, that attempts to provide an appropriate sentence for a crime based upon the crime of conviction and the individual's criminal history. See, *e.g.*, K.S.A. 21-4704. In 1993, the legislature passed S.B. 423, which incorporated both the sentencing guidelines and the substantive changes to the criminal code correlating with the guidelines. See L. 1993, ch. 291 (effective July 1, 1993).

I include this brief history of our current sentencing structure to highlight the significance of the person/nonperson offense designation as it relates to current and prior crimes. The KSGA was enacted in part to address concerns regarding disparity in sentencing practices across the state. See K.S.A. 21-4702. One such glaring disparity was the treatment of nonviolent property crimes in our urban, suburban, and rural district courts. Offenders convicted of property crimes with similar criminal histories were more likely to face incarceration depending upon the geographic location of the crime as opposed to any consideration of the nature of the crime, public safety, or recidivism. The designation of person/nonperson crimes is an integral component of the sentencing guidelines that addresses this disparity by distinguishing between those crimes that

11

warrant the most severe penalties and those that now require consideration of nonprison sanctions prior to incarceration. Generally, the presumptive sentence for nonperson crimes is supervised probation as opposed to prison, depending on the offender's criminal history. The majority properly recognizes that "person crimes are weighted more heavily than nonperson crimes." Slip op. at 4.

While there is some merit to Murdock's statutory construction arguments, another principle of statutory construction takes precedence.

> "As a general rule, criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt as to the meaning of the statute is decided in favor of the accused. This rule of strict construction is nevertheless subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." *State v. Gracey*, 288 Kan. 252, 257-58, 200 P.3d 1275 (2009).

First, I would clarify the majority's finding that Murdock's reliance on K.S.A. 21-4710(d)(8) is "misplaced." Slip op. at 9. The statute provides that "unclassified felonies and misdemeanors, shall be considered and are scored as nonperson offenses for the purposes of determining criminal history." The plain language of the statute does not apply in this circumstance. "Unclassified felonies," as used in this statute, refers to the limited number of felonies that were not classified at a specific severity level, not to the designation of a crime as being a person/nonperson offense. For example, possession of drugs without a stamp affixed, K.S.A. 79-5208—was an unclassified felony prior to 1994 (see L. 1994, ch. 291, sec. 83); altering a vehicle identification number, K.S.A. 8-113—is an unclassified felony; and a number of other Chapter 8 driving offenses are or were at one time unclassified felonies.

K.S.A. 21-4501(f) describes and fixes the punishment for unclassified felonies:

"Unclassified felonies, which shall include all crimes declared to be felonies without specification as to class, the sentence for which shall be in accordance with the sentence specified in the statute that defines the crime. If no sentence is provided in the statute, the offender shall be sentenced as for a class E felony."

Clearly, K.S.A. 21-4710(d)(8) has no application in this matter. Finding that this statute provides no mechanism to draw a distinction between current sentencing statutes and the pre-1993 criminal statutes, the majority, relying on *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010), concluded that all pre-1993 out-of-state convictions must be scored as nonperson offenses. Slip op. at 9.

The majority's holding would mean that almost no crime committed before 1993, no matter how violent or serious, could be specified as a person felony in scoring the criminal history for a crime committed post-1993. This simply is an intolerable result and completely compromises a sentencing structure that has as its primary goal protecting society from its most violent criminals.

I would distinguish *Williams* and limit its holding to the facts of that case. The prior crimes in question were identity thefts and all committed post-1993 and, thus, subject to a person/nonperson offense designation. At the time Williams committed her prior crimes, identity theft was designated as a person offense, but it had been changed to a nonperson offense by the time she was convicted and sentenced for her current crimes. We were confronted with the question of which designation applies to the prior crimes, not which designation to apply when one does not exist. I would simply narrow the application of the *Williams*' holding to the facts of that scenario, *i.e.*, when there is a change in the person/nonperson offense designation of a prior conviction—not to all pre-1993 offenses for which the designation of nonperson/person crimes was neither envisioned nor determined.

As the district court did here, Kansas courts have routinely designated pre-1993 offenses as either person or nonperson for criminal history purposes by comparing the offenses to current guidelines offenses. This approach also harmonizes the statutory requirement contained in K.S.A. 21-4724(c)(1) directing the Department of Corrections to convert pre-1993 crimes/convictions for inmates to the analogous crimes existing after July 1, 1993, on the applicable sentencing guidelines grid for criminal history purposes. As we relied on for validating our holding in *Williams*, this resolution is fair, logical, and easy to apply. There is simply no justification for altering the method that both district and appellate courts have utilized for over two decades in making this determination.

To now treat all pre-1993 crimes, 22 years after the enactment of the KSGA, as nonviolent nonperson crimes completely overlooks our sentencing structure, purpose, and design. It is a result that unexpectedly opens the prison gates to inmates who have a long history of committing violent crimes and pose the greatest threat to the public's safety. For these reasons I dissent.

LUCKERT and MORITZ, JJ., join in the foregoing dissent.